Anthony Robbins, M.D., M.P.A. Executive Director Colorado Department of Health 4210 East 11th Avenue Denver, Colorado 80220
Regents of the University of Colorado Regent Hall — #201 University of Colorado Boulder, Colorado 80309
Dear Dr. Robbins and Regents of the University of Colorado:
This will reply to the request of the Colorado Department of Health on December 1, 1977 for an attorney general's opinion on the question of whether the acceptance of the donation of the Davis Institute by the Colorado Board of Regents for the University of Colorado Medical Center would be subject to review under the Colorado Certificate of Public Necessity Act, C.R.S. 1973, 25-3-501, et seq., and under Section 1122 of the Social Security Act.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion asks whether the acceptance of the donation of the Davis Institute by the Colorado Board of Regents for the University of Colorado Medical Center would be subject to review under the Colorado Certificate of Public Necessity Act, C.R.S. 1973, 25-3-501, etseq., and Section 1122 of the Social Security Act,42 U.S.C. § 1320a-1?
 My conclusion is that the acceptance of the Davis Institute donation is not subject to Certificate of Need or Section 1122 review. However, capital expenditure on or use of the Davis Institute for provision of health care services may be reviewable under pertinent statutory criteria.
ANALYSIS
The facts, as we understand them, are these: the Davis Institute for the Care and Study of the Aging began as a geriatric research center located on land adjacent to Denver General Hospital and leased from the City and County of Denver. As originally approved in its first application for a Certificate of Public Necessity, the project envisioned a facility containing fifteen acute medical research beds and sixty to ninety efficiency apartment beds, plus necessary support services. At the time, only the fifteen medical beds required, and received, approval under both Certificate of Need and Section 1122. Those beds were to be complemented by eighty residential beds which did not require review and approval.
In February, 1977, Davis Institute submitted a new application for conversion of the eighty residential beds to seventy-eight self-care rehabilitation beds. These self-care rehabilitation beds would have required licensure by the Department of Health and the licensure would have made those beds eligible for Medicare, Medicaid and other third party reimbursement. Thus, the application for that conversion was subject to both Certificate of Need and Section 1122 review.
That application was withdrawn. On about August 2, 1977, the Davis Institute submitted an amended application seeking Certificate of Need and Section 1122 approval for the establishment of a forty-bed geriatric self-care rehabilitation unit. This was withdrawn as well. Both the Central Northeast Colorado Health Systems Agency and the Department of Health staff had recommended that the Health Facilities Advisory Council disapprove the two applications for Certificate of Need and Section 1122 reimbursement.
The present plan calls for the Davis Institute to donate to the University of Colorado Medical Center ("UCMC") the building, including ground lease, in which the Davis Institute is housed. The building is fully furnished. Although the building was fully equipped, much of the equipment was under lease or purchase agreement. UCMC first expected to use some of the equipment to replace outdated similar equipment at Colorado General Hospital, but this has apparently proved infeasible. Therefore, most of the equipment will be returned to the lessor or supplier prior to the transfer to UCMC. The remaining equipment reportedly has a value of well under $100,000. The value of the building is approximately $3,500,000. Checking accounts and other cash assets will also be transferred. The donor, Marvin Davis, also holds a number of pledges from various persons, evidently personal friends of Davis. He has indicated to the medical center that he will not call those pledges in until he is satisfied that the Davis Institute is operational under the medical center.
On December 16, 1977, the Regents of the University decided to accept the gift subject to proper application for and receipt of all necessary approvals, licenses and other forms of permission. The transfer of the facility to the medical center is to be free and clear of any existing liabilities or obligations. In return, the medical center must satisfy two conditions: (1) the facility must continue to be named the Davis Institute, and (2) UCMC must continue to use the facility to deal in some fashion with problems of aging. Other than this, UCMC at this time has no definite plans for the use of the facility.
Under present state law, i.e., the Standards for Hospitals and Health Facilities, as adopted by the Colorado State Board of Health, and specifically, Chapter II, Licensure, Section 1.4, each license or certificate of compliance is valid only in the hands of the person to whom it is issued, and is not subject to sale, assignment, or other transfer, voluntary or involuntary. The regulations further require that the Department of Health be notified thirty days in advance that an application for a new license or certificate of compliance be made in case of any of the following changes: (a) change in ownership or of management, (b) change in name or locality of health institution, (c) increase or decrease in bed capacity, (d) change in classification. Implicit in this licensing scheme is the premise that the license lapses or becomes invalid upon the transfer of the health facility to another person. The new owner or transferee is required to apply for a new license. In the case of the Davis Institute, the license for the fifteen ICU beds will lapse upon transfer. The beds cannot be used for health services by Colorado General until licensed by the Department of Health.
For the reasons stated below, we conclude that the transfer of the Davis Institute to UCMC is not subject to review under either the Certificate of Public Necessity Act, C.R.S. 1973, 25-3-501,et seq., or Section 1122 of the Social Security Act. However, further actions with respect to the facility may be cause for review.
A. CERTIFICATE OF PUBLIC NECESSITY REVIEW
C.R.S. 1973, 25-3-503 generally states the events which would require a Certificate of Public Necessity and hence would precipitate review under the Certificate of Public Necessity Act, C.R.S. 1973, 25-3-501, et seq.
With the exception of C.R.S. 1973, 25-3-503(1)(c), which may require review under the Act depending on future use, we conclude that the acceptance of the facility by UCMC does not require review under the Act.
Section 25-3-503(1)(c) would require review for any "utilization of any existing hospital or health care facilities for provision of health care services, which hospital or facility currently is not licensed by the department." This paragraph could require review at a later date, depending upon the use to which the Davis Institute was put. The term "health care services" in this section is not defined. However, the reference to licensure of the facility by the Department of Health implies that a facility would be deemed to be used to provide health care services within the meaning of 25-3-503(1)(c) when it would have to be licensed by the department. Under this interpretation, utilization of the Davis Institute for purely research purposes, for example, would not require licensure by the department as a health care facility. In such case, the Institute would not be deemed to have been used for the provision of "health care services." If, on the other hand, the facility is used to provide skilled nursing care to the elderly — even if research were an ingredient or by-product of that care — UCMC would have to acquire a Certificate of Public Necessity.
Section 25-3-503(1)(f) requires review of the sale, lease, or transfer of ownership of the controlling interest of a hospital or health care facility. While the gift of the Davis Institute might seem to be a "transfer of ownership of the controlling interest of a health care facility," subsection (f) states that it shall not apply to licensed general hospitals. Since UCMC is a licensed general hospital, we conclude this subsection does not require review under these circumstances.
For the foregoing reasons, we have concluded that a Certificate of Public Necessity under the State Certificate of Public Necessity Act would not be required until UCMC decides that it wishes to utilize the Davis Institute for the provision of health care services.
B. SECTION 1122 REVIEW
Section 1122 of the Social Security Act (42 U.S.C. § 1320a-1) requires review of all capital expenditures made by or on behalf of a health care facility in order to assure that federal funds appropriated under Titles V, XVIII, XIX of the Social Security Act are not used to support unnecessary capital expenditures.
It is important to note that health care facilities which, for one reason or another, are not concerned with reimbursement under any of these titles may consider Section 1122 approval optional. In other words, a facility which offered — as the Davis Institute originally did — residential services to the elderly for which no Medicaid or other federal reimbursement was available, would be neither required to undergo, nor otherwise concerned with, Section 1122 review. See,e.g., NAACP v. Wilmington Medical Center,Inc., 426 F. Supp. 919, 922 (D. Del. 1977).
The Department of Health, Education and Welfare has adopted rules and regulations implementing Section 1122. These regulations are found at 42 CFR 100.101, et seq.
42 CFR 100.103 states:
 Expenditures Covered. Any capital expenditure proposed by or on behalf of any health care facility or health maintenance organization, the obligation for which is incurred by or on behalf of a health care facility or health maintenance organization . . . is subject to this subpart . . . .
42 CFR 100.103(a)(1) defines "capital expenditure" as "an expenditure, including a force account expenditure (i.e., an expenditure for a construction project undertaken by the facility as its own contractor), which, under generally accepted accounting principles, is not properly chargeable as an expense of operation and maintenance and which (i) exceeds $100,000, or (ii) changes the bed capacity of the facility with respect to which such expenditure is made, or (iii) substantially changes the services of the facility with respect to which such expenditure is made." (Emphasis added.)
At this time, we have no evidence that UCMC is making a capital expenditure which exceeds $100,000 in the transfer of the Davis Institute, or otherwise satisfies any other definition of "capital expenditure" under the regulations.
Finally, 42 CFR 100.103(b) covers the case in which a person obtains, under lease or comparable arrangement, or through donation, any facility or part thereof, or equipment for a facility, the expenditure for which would have been considered a capital expenditure and subject to exclusion from reimbursement if the person had acquired it by purchase. If the medical center had acquired the Davis Institute by purchase, it would have been a capital expenditure. 42 CFR 100.103(b) requires in case of a donation, which is carried by the acquiring person as a capital asset, that HEW exclude from reimbursement any amount claimed for depreciation on the facility, and other costs related to the acquisition.
We conclude, then, that if UCMC makes a capital expenditure with respect to the Davis Institute then it must undergo 1122 review if it wishes to claim reimbursement for expenses related to that capital expenditure. The mere transfer — or donation — of the Davis Institute need not be reviewed. However, depreciation on the facility and related costs will be automatically excluded from reimbursement.
SUMMARY
To briefly summarize my opinion the mere donation of the Davis Institute, a geriatric research center, to the University of Colorado Medical Center does not require review under the Certificate of Need Act or Section 1122 of the Social Security Act. However, capital expenditures on or use of the Davis Institute for the provision of health care services, whether research was an ingredient or by-product of the care, may require review under these acts. This depends upon whether the pertinent statutory criteria requiring review are reached.
Because the preparation and review of an application for a Certificate of Public Necessity or Section 1122 approval can be time-consuming, no decision by UCMC to use the Davis Institute for some reviewable purpose can be swift or impetuous. Particularly with large, ambitious or controversial projects, the approval process may be protracted. Thus, it is not too early to begin to plan with respect to the Davis Institute. We would suggest that UCMC coordinate such plans with all appropriate state health planning agencies.
If you have any further question, please let us know.
Very truly yours,
 J.D. MacFARLANE Attorney General
LABORATORIES SOCIAL SECURITY EDUCATION, HIGHER HEALTH GIFTS EDUCATIONAL INSTITUTIONS HOSPITALS MEDICAID AND MEDICARE HEALTH PRODUCTS AND SERVICES
42 U.S.C. § 1320a-1
42 C.F.R. 100 42 C.F.R. 102 42 C.F.R. 103 42 C.F.R. 100 et seq. 42 C.F.R. 101 et seq.
C.R.S. 1973, 25-3-501 et seq. C.R.S. 1973, 25-3-503
HEALTH, DEPT. OF Local Education Sect. HIGHER EDUCATION, DEPT. OF University of Colorado
Donation of the Davis Institute (a geriatric research center) to the University of Colorado Medical Center is not subject to Certificate of Need or Section 1122 review. However, capital expenditures on or use of the Davis Institute for provision of health care services, whether research were an ingredient or by-product of the care, would be subject to Certificate of Need or Section 1122 review under pertinent statutory criteria.